1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                  EASTERN DISTRICT OF CALIFORNIA

7

8   JANELLE PEREZ, an individual,      No. 2:13-CV-2150-GEB-DAD

9              Plaintiff,

10      v.                             **ORDER GRANTING EACH DEFENDANT'S**
                                       **SUMMARY JUDGMENT MOTION**
11  CITY OF ROSEVILLE, ROSEVILLE
    POLICE DEPARTMENT, CHIEF
12  DANIEL HAHN, an individual;
    CAPTAIN STEPHAN MOORE, an
13  individual; and LIEUTENANT
    CAL WALSTAD, an individual,
14
                Defendants.
15

16          The   following   Defendants   seek   summary   judgment   on

17  claims  in  Plaintiff's  First  Amended  Complaint  ("FAC"):  City  of

18  Roseville   ("the   City"),   Roseville   Police   Department   ("Police

19  Department"),   Police   Department   Chief   Daniel   Hahn,   Police

20  Department   Captain   Stephan   Moore,   and   Police   Department

21  Lieutenant  Cal  Walstad.  Plaintiff  Janelle  Perez  alleges  gender

22  discrimination  claims  against  each  Defendant  under  Title  VII  of

23  the  federal  Civil  Rights  Act  of  1964  ("Title  VII")  and  under

24  California's  Fair  Employment  and  Housing  Act  ("FEHA"),  and  that

25  Chief  Hahn,  Captain  Moore,  and  Lieutenant  Walstad  (collectively

26  the   "Individual   Officer   Defendants")   violated   her   federal

27  constitutional  rights  to  intimate  association,  privacy,  and  due

28  process.

                                    1

## I. LEGAL STANDARD

> A party is entitled to summary judgment if
> "the movant shows that there is no genuine
> dispute as to any material fact and the
> movant is entitled to summary judgment as a
> matter of law." . . . The moving party has
> the burden of establishing the absence of a
> genuine dispute of material fact.

City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir.

2014) (quoting Fed. R. Civ. P. 56(a)) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986)). "A fact is 'material' when,

under the governing substantive law, it could affect the outcome

of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav.

Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A "dispute about

a material fact is 'genuine,' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving

party." Anderson, 477 U.S. at 248. Summary judgment "evidence

must be viewed in the light most favorable to the nonmoving

party, and all reasonable inferences must be drawn in favor of

that party." Sec. & Exch. Comm'n v. Todd, 642 F.3d 1207, 1215

(9th Cir. 2011) (citing Johnson v. Paradise Valley Unified Sch.

Dist., 251 F.3d 1222, 1227 (9th Cir. 2001)).

> A party asserting that a fact cannot be or is
> genuinely disputed must support the assertion
> by . . . citing to particular parts of
> materials in the record . . . or . . .
> showing that the materials do not establish
> the absence or presence of a genuine dispute,
> or that an adverse party cannot produce
> admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

> However, if the nonmovant does not
> "specifically . . . [controvert duly
> supported] facts identified in the [movant's]

2

1
2
3
4

> statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006). A district court has "no independent duty 'to scour the record in search of a genuine issue of triable fact.'"

5  Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir.

6  2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.

7  1996)).

8  ## II. UNCONTROVERTED FACTS

9  Each party submitted facts concerning the motion. The

10  following facts are undisputed or "deemed" uncontroverted since

11  they have not been controverted with specific facts as required

12  by Local Rule 260(b).[1] See Beard, 548 U.S. at 527 (stating when a

13  party fails to "specifically . . . challenge the facts identified

14  in [another party's] statement of undisputed facts," the validity

15  of the unchallenged facts is "deemed" to have been admitted).

16  In 2011, Plaintiff applied for a Police Officer

17  position with the City. (Pl.'s Opp'n to Defs.' Statement of

18  Undisputed Facts ("Def. SUF") ¶ 3, ECF No. 35.) She was hired and

19  received an "offer letter" from Chief Hahn dated January 4, 2012,

20  which states she would "serve a probationary period of twelve

21  (12) months[, and d]uring [her] probationary period [she] may be

22

23  [1] Local Rule 260(b) prescribes:

24  Any party opposing a motion for summary judgment or
25  summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each
26  denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer,
27  admission, or other document relied upon in support of that denial.

28

3

1   released from City service with or without cause at the sole

2   discretion of the City."[2] (Hahn Decl. ¶ 4 Ex. A, ECF No. 32-1.)

3          Plaintiff began her probationary period on January 9,

4   2012. (Def. SUF ¶¶ 8, 10.)  She was given a patrol assignment and

5   a few months into the assignment, she and another officer, Shag

6   Begley ("Begley") initiated a personal relationship; at the time,

7   Plaintiff and Begley were both separated from, but legally

8   married to other individuals. (Separate Statement of Add'l

9   Material Facts ISO Pl. Opp'n ("Pl. SUF") ¶¶ 8-10, ECF No. 36.) On

10  or about June 6, 2012, Begley's wife, Leah Begley, filed a

11  citizen complaint concerning Plaintiff and Begley. (Def. SUF ¶¶

12  23-24.) She alleged in that complaint that Plaintiff and Begley

13  were having an affair and "suggested that Begley and [Plaintiff]

14  were engaging in romantic interactions while on-duty." (Def. SUF

15  ¶¶ 26-27.) Internal Affairs ("IA") opened an investigation of the

16  complaint, which was headed by Lieutenant Troy Bergstrom. (Def.

17  SUF ¶¶ 28-29.) Lieutenant Bergstrom concluded there was no

18  evidence of sexual conduct between Plaintiff and Begley while on-

19  duty, but that Plaintiff and Begley "made a number of calls and

20  texts when one or both was on duty" and these communications were

21  "potentially" violations of Police Department policy. (Def. SUF

22  ¶¶ 36-38.)

23          Lieutenant Bergstrom provided his IA report to Captain

24  Moore "for review and decision about whether disciplinary action

25  _____

26  [2]      The "City" referenced in the letter is the department head, Chief
    Hahn, since Section 3.06.160 of the City of Roseville Personnel Rules &
    Regulation prescribes that probationary employees receive permanent employment
27  "[i]f at the conclusion of the employee's probationary period, the employee's
    performance has been satisfactory in the opinion of the department head."
28  (Hahn Decl. Ex. B, ECF No. 31-1) (emphasis added.)

                                    4

1  should be imposed." (Def. SUF ¶ 39.) Captain Moore assigned

2  Lieutenant Walstad to review the report for the purpose of

3  recommending findings; Lieutenant Walstad recommended in a memo

4  dated July 10, 2012 that the Department find Plaintiff's and

5  Begley's on-duty cellphone use violated Police Department policy.

6  (Def. SUF ¶¶ 42-43.) Captain Moore agreed with Lieutenant

7  Walstad's findings and "felt" Plaintiff should be released from

8  probation, but Chief Hahn "disagreed and felt a reprimand was"

9  the appropriate sanction. (Def. SUF ¶¶ 49-50.) Captain Moore

10 "issued a findings memo to each Perez and Begley stating that two

11 alleged policy violations were 'sustained;'" and he "also issued

12 written reprimands dated August 23, 2012, to both Begley and

13 Perez, stating: (1) they made personal telephone calls while on

14 duty that interfered with their work performance in violation of

15 [Policy Manual] section 340.3.5(c); and (2) their personal

16 relationship impacted and reflected unfavorably upon the

17 Department in violation of [Policy Manual] section 340.3.5(aa)."

18 (Def. SUF ¶¶ 51-52.)

19      Plaintiff and Begley appealed their reprimands and

20 Plaintiff's appeal meeting with Chief Hahn was scheduled to be

21 held on September 4, 2012. (Def. SUF ¶¶ 53, 55.) At the

22 conclusion of her appeal meeting, Chief Hahn advised Plaintiff

23 she was being released from probation and provided her with a

24 written notice of dismissal, effective September 4, 2012. (Def.

25 SUF ¶¶ 55, 91, 94.) The written notice was prepared in advance of

26 the meeting and Chief Hahn declares he "had already decided to

27 terminate [Plaintiff's probationary] employment based on . . .

28 additional information he had learned [before he met with

5

1    Plaintiff on her appeal]". (Def. SUF ¶ 97.)

2                          **III. DISCUSSION**

3         **A.    Title VII and FEHA Claims**

4              Each Defendant seeks summary judgment on Plaintiff's

5    discrimination claims, in which she alleges her probationary

6    employment was terminated because of her gender. Defendants

7    assert Plaintiff's probation was terminated for legitimate, non-

8    discriminatory reasons that are unrelated to her gender.

9    Specifically, Chief Hahn, who terminated Plaintiff's employment

10   approximately eight months after she commenced her twelve month

11   probation period, declares he terminated her employment for three

12   reasons:

13            [First,] [s]ometime between the conclusion of
              the IA investigation and September 4, 2012,
14            [Chief Hahn] learned from Lieutenant Maria
              Richardson that some of the Department's
15            female officers had raised concerns about
              [Plaintiff's] attitude and poor communication
16            skills with them. When [he] learned this,
              [Chief Hahn] recalled there being similar
17            issues of concern from [Plaintiff's]
              background investigation report regarding her
18            relationships with female officers at her old
              department[, the South San Francisco Police
19            Department.][3]

20            . . . .

21            [When the Police Department] performed the
              customary pre-employment background
22            investigation regarding Plaintiff, [it
              revealed] some issues of concern regarding
23            her attitude and conflict with other female
              officers at her former department . . . [but]

24   _____
25   [3]      Plaintiff objects to this South San Francisco Police Department
     evidence arguing it is vague, ambiguous, hearsay, and improper character
26   evidence. Defendants counter the evidence is not hearsay since it "is not
     offered to prove the truth of the matter asserted, but rather for its effect
27   on" Chief Hahn, and that it is not improper character evidence since it is
     offered for the limited purpose of explaining Chief Hahn's decision. (Def.'s
     Reply to Mem. P&A Opp'n Def. Mot. Summ. J. ¶ 6, ECF No. 48-1.) In light of
28   Defendants' stated purpose of this evidence, the objections are overruled.

it was unclear whether those conflicts were entirely her fault.

. . . .

[Second,] [s]ometime in mid-to late-August 2012, [Chief Hahn] learned from Lieutenant Troy Bergstrom of a citizen complaint about [Plaintiff] that had come in through the Department's online "complaint or concern" system. The complaint arose out of a domestic violence related call and what the complainant viewed as rude or inappropriate statements by [Plaintiff]. . . . Apparently [the complainant] did not wish to pursue it further, and [the Police Department] did not open a formal internal investigation.

[Third,] [o]n or about August 30, 2012, [Chief Hahn] had a conversation with Sargent Kelby Newton and Lieutenant Marc Glynn about a shift trade issue that had arisen involving [Plaintiff]. Sargent Newton, who at the time was . . . tasked with many scheduling and administrative matters, had contacted [Plaintiff] to determine when she would work the 'back end' of a shift trade she had . . . arranged with Begley . . . . Sargent Newton told [Chief Hahn that Plaintiff] had demonstrated a bad attitude with him on the phone, taking the position that it was none of the department's business when she worked the trade shift, and that it was between her and Begley (which is how she said it was done at her old department). . . . Newton told [Chief Hahn that Plaintiff's] attitude with him on the phone was so bad he actually asked her what he had done to upset her, and she told him words to the effect that it wasn't him but the Department was treating her poorly. [Chief Hahn] was very concerned about the attitude [Plaintiff] had displayed with Sargent Newton. Newton later documented his conversation with [Plaintiff] in a written memo and [Chief Hahn] received a copy.

. . . .

Shortly after [Chief Hahn's] August 30 conversation with Sargent Newton, [he] decided, based on all the new issues of concern [he] had recently learned from [Sargent Newton], Lieutenant Richardson, and Lieutenant Bergstrom, to release [Plaintiff] from probation.

7

1  (Hahn Decl. ¶¶ 3, 14-17, 19, ECF No. 32.)

2        Defendants, through counsel, also argue a fourth reason

3  for Plaintiff's termination was "Chief Hahn's knowledge from the

4  IA report that Perez had engaged in personal communications while

5  on duty and while involved in police duties." (Mem. ISO Defs.'

6  Mot. Summ. J. ("Mot.") 8:7-8, ECF No. 29.) However, Chief Hahn

7  avers he "did not release [Plaintiff] from probation based on the

8  results of the IA investigation . . . [since making] personal

9  calls during work time . . . was a concern, but not one

10  warranting termination." (Hahn Decl. ¶ 27.)

11        Plaintiff responds that each asserted legitimate non-

12  discriminatory reason for terminating her probationary employment

13  was a pretext for gender discrimination, and that her gender was

14  a motivating factor in the Chief's termination decision.

15        Plaintiff's Title VII and FEHA gender discrimination

16  claims "operate under the same guiding principles," and therefore

17  "we need only assess her claim[s] under federal law." <u>Brooks v.</u>

18  <u>City of San Mateo</u>, 229 F.3d 917, 923 (9th Cir. 2000) (citing

19  <u>Beyada v. City of L.A.</u>, 65 Cal. App. 4th 511, 517 (1998)).

20        **1.   Pretext**

21        <u>A "plaintiff may establish pretext either</u>

22  <u>directly by persuading the court that a</u>
   <u>discriminatory reason more likely motivated</u>

23  <u>the employer or indirectly by showing that</u>
   <u>the employer's proffered explanation is</u>

24  <u>unworthy of credence." If a plaintiff uses</u>
   <u>circumstantial evidence to satisfy this</u>

25  <u>burden, such evidence "must be specific" and</u>
   <u>"substantial." "An employee in this situation</u>

26  <u>can not simply show the employer's decision</u>
   <u>was wrong, mistaken, or unwise." "Rather, the</u>

27  <u>employee must demonstrate such weaknesses,</u>
   <u>implausibilities, inconsistencies,</u>

28  <u>incoherencies, or contradictions in the</u>
   <u>employer's proffered legitimate reasons for</u>

8

1        <u>its action that a reasonable factfinder could</u>
<u>rationally find them unworthy of . . .</u>
2        <u>credence</u> . . . and hence infer that the
employer did not act for the . . .
3        nondiscriminatory reasons."

4 <u>Dep't of Fair Emp't and Hous. v. Lucent Tech., Inc.</u>, 642 F.3d

5 728, 746 (9th Cir. 2011) (emphasis added, internal citations

6 omitted.) "In assessing whether the employer's reason for the

7 action is pretextual, 'it is not important whether [the proffered

8 justification] is objectively false,' . . . . '[r]ather, courts

9 only require that an employer honestly believed its reason for

10 its actions, even if its reason is foolish, or trivial or even

11 baseless." <u>Westendorf v. West Coast Contractors of Nev., Inc.</u>,

12 712 F.3d 417, 425 (9th Cir. 2013) (citing <u>Villiarimo v. Aloha</u>

13 <u>Island Air, Inc.</u>, 281 F.3d 1054, 1063 (9th Cir. 2002)). "All of

14 the evidence—whether direct or indirect—is to be considered

15 cumulatively. <u>Shelley v. Geren</u>, 666 F.3d 599, 609 (9th Cir.

16 2012).

17           **a.   Rapport with Female Co-Workers**

18       Plaintiff responds to Chief Hahn's averment that her

19 probationary employment was terminated because of her negative

20 rapport with female co-workers, contending this reason is a

21 pretext for gender discrimination since she testified during her

22 deposition that she "did not think" she had ever worked with

23 another female officer at the Police Department, and her July

24 2012 performance evaluation listed her communication skills as

25 satisfactory. (O'Dowd Decl. Ex. C ("Perez Dep. Tr.") 61:24-62:7,

26 ECF No. 38; O'Dowd Decl. ¶ 13 Ex. U, ECF Nos. 37, 43.)[4]

27 ───────────────
[4]       Defendants object to Plaintiff's performance evaluation arguing it
28 has not been properly authenticated, Plaintiff lacks foundation, and the
content of the evaluation is hearsay. (Pl. SUF ¶ 85.) Plaintiff's counsel

1    Plaintiff's testimony that she "did not think" she had
2  worked with any female officers does not controvert Chief Hahn's
3  declaration that he learned she had "poor communication" with
4  other female officers since an employee does have to engage in an
5  assigned work task with other officers to communicate with them.
6  Further, Plaintiff's testimony that she "did not think" she had
7  worked with any female officer does not evince that she remembers
8  whether she in fact worked with a female officer. Nor does
9  Plaintiff's July 2012 performance evaluation support drawing a
10  reasonable inference of gender discrimination since it reported
11  how Plaintiff's performance was perceived <u>before</u> Chief Hahn spoke
12  with Lieutenant Richardson "[s]ometime between the conclusion of
13  the IA investigation and September 4, 2012." (Hahn Decl. ¶ 14.)[5]
14  Therefore Plaintiff has not presented evidence from which a
15  reasonable inference could be drawn that Chief Hahn's reliance on
16  this reason for terminating her probationary employment was a
17  pretext for gender discrimination.

18           **b.   "Agitated" Communication with a Superior**

19    Plaintiff responds to Chief Hahn's averment that her
20  probationary employment was terminated because he learned from

---

22  declares that the document was created by the Police Department and produced
   by Defendants in discovery. Therefore, Defendants' authentication and
23  foundation objections are overruled. <u>See</u> <u>Orr v. Bank of Am., NT&SA</u>, 285 F.3d
   764, 777 n.20 (9th Cir. 2002) (citing <u>Maljack Prods., Inc. v. GoodTimes Home
24  Video Corp.</u>, 81 F.3d 881, 889 n. 12 (9th Cir. 1996) for the proposition that
   "documents produced by a party in discovery were deemed authentic when offered
25  by the party-opponent."). Further, Defendants have not shown that the content
   of the documents are hearsay in the situation here where they are used
   "against an opposing party." Fed. R. Evid. 801(d)(2).
26  [5]    Chief Hahn does not specify when "the conclusion of the IA
   investigation" occurred. (Hahn Decl. ¶ 14.) However, it is uncontroverted that
27  Lieutenant Bergstrom provided his IA report to Captain Moore for review by at
   least July 10, 2012, (Def. SUF ¶¶ 39, 42-43), and that Captain Moore "issued a
28  findings memo to . . . [Plaintiff] stating that two alleged policy violations
   [against her] were 'sustained'" on August 23, 2013. (Def. SUF ¶¶ 51-52.)

1   Sargent Newton that Plaintiff had an "agitated" discussion with

2   Newton, contending it is a pretext for gender discrimination, and

3   that this is evidenced by Chief Hahn's violation of standard

4   operating procedure by forcing Sargent Newton to write a memo

5   about the matter. Plaintiff supports her position citing Sargent

6   Newton's deposition testimony in which he testified that after

7   speaking on the phone with Plaintiff, he was called to Lieutenant

8   Glynn's office and upon arrival he saw Lieutenant Glynn, Captain

9   Moore, and Chief Hahn; Sargent Newton only expected to see

10  Lieutenant Glynn; Newton's superiors then asked him to write a

11  memo about his conversations with Plaintiff. (Newton Dep. Tr.

12  38:14-39:13.) Sargent Newton also testified it was "weird" that

13  he was asked to write a memo since he "ha[d] never written a memo

14  about a phone conversation before" in seventeen years working for

15  the Police Department, and when he saw Captain Moore and Chief

16  Hahn he "kn[ew] something [was] going on." (Newton Dep. Tr.

17  38:15-39:6.)

18        However, this evidence does not "demonstrate such

19  weaknesses . . . in . . . [Chief Hahn's] proffered legitimate

20  reason[] for [terminating Plaintiff's probationary employment]

21  that a reasonable factfinder could rationally find [this

22  termination reason] unworthy of . . . credence." Lucent Tech.,

23  Inc., 642 F.3d at 746 (internal citations omitted). Chief Hahn

24  did not need a memo memorializing the communications to justify

25  relying on them as a basis for terminating Plaintiff's

26  probationary employment. Chief Hahn declares he spoke to Sargent

27  Newton directly about the issue before Sargent Newton wrote the

28  memo, averring:

11

On or about August 30, 2012, I had a conversation with Sgt. Kelby Newton and Lt. Marc Glynn about a shift trade issue that had arisen involving Perez. Sgt. Newton, who at the time was the day shift sergeant tasked with many scheduling and administrative matters, had contacted Perez to determine when she would work the "back end" of a shift trade she had apparently informally arranged with Begley without using the Department's approval form. During our conversation, Sgt. Newton told me Perez had demonstrated a bad attitude with him on the phone, taking the position that it was none of the department's business when she worked the trade shift, and that it was between her and Begley (which is how she said it was done at her old department). Perez also apparently inquired as to whether it was Lt. Richardson who gave Newton direction to follow up on the matter (it had not been – Newton was performing his typical duties and reporting the issue to his own lieutenant, Lt. Glynn). Newton told me Perez' attitude with him on the phone was so bad that he actually asked her what he had done to upset her, and she told him words to the effect that it wasn't him but the Department was treating her poorly. I was very concerned about the attitude Perez had displayed with Sgt. Newton.

(Hahn Decl. ¶¶ 16-17.) Plaintiff has not presented a genuine issue of material fact concerning whether Chief Hahn honestly believed Plaintiff had an agitated conversation with Sargent Newton, and displayed a bad attitude that concerned him.

### c. Citizen Complaint Concerning Domestic Violence Call

Plaintiff also contends that Chief Hahn's averment that her probationary employment was terminated because of a citizen complaint, in which it was alleged that Plaintiff was rude during a domestic violence investigation, is a pretext for gender discrimination. Plaintiff cites Chief Hahn's deposition testimony where he "testified that he felt no need to get [Plaintiff's]

side of the story" as support for this contention; Plaintiff contends this failure "mitigates the importance of the [citizen] complaint" and "bears on the complaint's veracity." (Mem. P&A Opp'n Defs.' Mot. Summ. J. ("Opp'n") 14:17-21, ECF No. 34.) Plaintiff also states Chief Hahn testified that the complaint never rose to the level of a formal investigation and that he did not know if anyone had ever talked with Plaintiff about the incident; and that when Chief Hahn was asked if he was "interested in hearing [Plaintiff's] side of the story," he answered, "Well, we would have [if] it was an internal affairs complaint, but it never became one." (O'Dowd Decl. Ex. A ("Hahn Dep. Tr.") 55:24-56:7, ECF No. 38.)

Even if Chief Hahn's reliance on the complaint is considered trivial, when viewing this evidence in the light most favorable to Plaintiff as required under the summary judgment standard, Plaintiff has not shown that Chief Hahn's declared reliance on the complaint was a pretext for gender discrimination.

### d.  Cumulative Evidence

Plaintiff argues that the cumulative weight of the evidence evinces that Chief Hahn's stated reasons for terminating her employment were pretext for gender discrimination. Defendants respond that Plaintiff has not countered their

> evidentiary showing with specific facts from which a reasonable inference can be drawn that Defendants' proffered explanation for her release from probation is a pretext for discrimination[;] and [d]istilled to its essence, [Plaintiff's] . . . attempt to establish pretext relies on her own speculative belief that Chief Hahn was motivated by her gender when he released her

1  from probation.

2  (Def. Reply ("Reply") 8:8-12, ECF No. 48.) Defendants also

3  respond that Plaintiff has not overcome the same actor inference

4  principle, which creates a strong presumption that there was no

5  discriminatory reason for terminating her probationary

6  employment, under the circumstances here where Plaintiff was

7  hired and fired by the same individual within a 12-month period.

8  "[W]here the same actor is responsible for both the

9  hiring and firing of a discrimination plaintiff, and both actions

10  occur within a short period of time, a strong inference arises

11  that there was no discriminatory motive." Bradley v. Harcourt,

12  Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996) (finding that

13  terminating an employee after 12-months occurred within a short

14  period of time). It is uncontroverted that Chief Hahn was the

15  decision-maker responsible for both hiring Plaintiff in January

16  2012 and terminating her probationary employment in September

17  2012. (Def. SUF ¶¶ 7-8, 94-95.) "The same-actor inference is a

18  'strong inference' that a court must take into account on a

19  summary judgment motion." Schechner v. KPIX-TV, 686 F.3d 1018,

20  1026 (9th Cir. 2012).

21  Chief Hahn is entitled to the strong inference arising

22  from the same-actor principle, and this inference weighs heavily

23  against the inferences Plaintiff seeks to have drawn from the

24  evidence on which she relies in support of her gender

25  discrimination claims.

26  **2.  Mixed-Motive Theory**

27  Plaintiff argues that even if there is insufficient

28  evidence from which a reasonable inference could be drawn that

14

1    the stated reasons for terminating her probationary employment

2    were pretext for gender discrimination, she still defeats

3    Defendants' motion under a mixed-motive theory since her

4    "evidence show[s] [that her termination] was motivated, at least

5    in part, by [her] gender." (Opp'n 15:27-28.) Specifically,

6    Plaintiff argues Begley and male probationary officers were

7    treated more favorably by the Police Department than she was, and

8    that their more favorable treatment evinces that her gender was a

9    motivating factor in Chief Hahn's decision to terminate her

10   probationary employment.[6]

11         Even where "the evidence . . . permit[s] a finding that

12   [an employer] has a legitimate reason for [terminating a

13   plaintiff's employment]," summary judgment in favor of the

14   employer is error if "a reasonable factfinder could conclude that

15   the [termination] decision was motivated at least in part by

16   [plaintiff's] gender." <u>Dominguez-Curry v. Nev. Transp. Dep't</u>, 424

17   F.3d 1027, 1041 (9th Cir. 2005). Under the mixed-motive theory,

18   "unlawful [termination] is established when the complaining party

19   demonstrates that . . . <u>[gender] was a motivating factor for [her</u>

20   <u>termination], even though other [legitimate] factors also</u>

21   <u>motivated the [termination]</u>." 42 U.S.C. § 2000e-2 (emphasis

22   added).

23   ///

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25   [6]        Plaintiff also cites the experiences of another female officer,
     Officer Greene, who claims she experienced gender discrimination when applying
26   for a promotion at the Police Department, in support of her argument that
     gender was a motivating factor in Chief Hahn's decision to terminate
27   Plaintiff's employment. However, Plaintiff fails to present evidence that
     Chief Hahn was involved in Officer Greene's allegedly discriminatory
28   experience at the Police Department and therefore, Plaintiff fails to show
     this evidence is relevant to her claims.

1          **a. Begley's Treatment**

2          Plaintiff argues her mixed-motive gender discrimination

3     position is evinced by the following differences between how the

4     Police Department treated her and how it treated Begley: (1) she

5     "was terminated, while Begley was not;" (2) "the [Police]

6     Department included a female sergeant in [Plaintiff's] IA

7     notification meeting" yet "[t]his female sergeant was not present

8     when Begley was notified" of the IA investigation; and, (3)

9     although one of Chief Hahn's stated reasons for terminating

10    Plaintiff's probationary employment was an "agitated"

11    conversation she had with a superior, Begley had a similar

12    conversation with his superior but "was not reprimanded or

13    terminated for this behavior." (Opp'n 11:20-25.)

14         Defendants reply that Begley's employment was not

15    terminated since "there is no evidence of him engaging in the

16    behavior that collectively led" Chief Hahn to release Plaintiff

17    from probation, and even if Plaintiff could show her probation

18    was terminated as a result of the IA investigation, Begley

19    "successfully passed probation years ago and had a positive

20    performance history," showing he had a "dissimilar employment

21    status" to Plaintiff. (Reply 3:5-16.) Defendants support their

22    position citing the uncontroverted facts that Begley "was hired

23    by the City in 2007, successfully completed his probationary

24    period, and had a positive performance history." (Def. SUF ¶ 25.)

25    Defendants also argue that Begley's "heated exchange" with

26    Lieutenant Bergstrom is not evidence that Plaintiff's gender was

27    a motivating factor in her termination since "[t]he circumstances

28    of the Begley/Bergstrom exchange were different from the

                                      16

1   [Plaintiff]/Newton exchange." (Reply 3:23-26.) Specifically,

2   Defendant argues "Begley and Bergstrom had an established

3   relationship . . . and Bergstrom invited Begley to say what was

4   on his mind . . . . [while Plaintiff] and Newton had no such

5   history . . . [;] nor did she ask for or receive the proverbial

6   'permission to speak freely." (Reply 3:26-4:1.) Defendants cite

7   the following uncontroverted fact in support for their position:

8   when Begley and Bergstrom had what Plaintiff refers to as a

9   "heated argument," "Bergstrom invited Begley (who he 'knew pretty

10  well') to say what was on his mind and not beat around the bush."

11  (Def. SUF ¶ 41.)

12          Plaintiff supports her position concerning IA

13  notification meeting by citing Lieutenant Bergstrom's deposition

14  testimony where he testified he brought a female sergeant with

15  him to inform Plaintiff of the IA investigation, but he was not

16  accompanied by a female officer when he informed Begley of the IA

17  investigation.   Lieutenant Bergstrom explained the difference in

18  this treatment in his deposition as follows: because of "[t]he

19  type of allegation that it was, [he thought] it might make

20  [Plaintiff] feel more comfortable if [a female] was there[;]"

21  however, Bergstrom was not accompanied by a female sergeant when

22  he informed Begley of the IA investigation since Begley is "male"

23  and Bergstrom "kn[ew] Officer Begley, so it's different." (O'Dowd

24  Decl. Ex. F Bergstrom Dep. Tr. 40:20-42:12, ECF No. 38.)

25          Plaintiff also relies on Begley's deposition testimony

26  to show that he also had an agitated conversation with a superior

27  and yet was not disciplined.   Begley testified he had a "heated

28  argument" with Lieutenant Bergstrom after he was notified about

17

1  the IA investigation; both men yelled, but "nothing came of" it.
2  (Begley Dep. Tr. 90:16-92:12.)

3      Although Plaintiff argues Begley should have been
4  terminated since she was terminated, the evidence does not
5  support drawing a reasonable inference that Begley engaged in the
6  conduct that Chief Hahn declares justified releasing Plaintiff
7  from her probationary employment position. Nor has Plaintiff
8  explained how having a female officer present when she was
9  informed about the IA investigation demonstrates that her gender
10 was a motivating factor in the termination decision. Moreover,
11 Chief Hahn has not been shown to lack credence regarding his
12 concern about the bad attitude Plaintiff displayed when
13 communicating with a superior officer about a shift scheduling
14 matter.

15                **b. Treatment of Male Probationary Officers**

16     Plaintiff also argues that the Police Department
17 treated male probationary officers more favorably than she was
18 treated, and that this evinces her gender was a motivating factor
19 in Chief Hahn's decision to terminate her employment. Plaintiff
20 argues "male lateral officers with similar or less experience
21 [than she had]. . . were released early from the field training
22 program, while [Plaintiff] was required to do the full ten (10)
23 work weeks." (Opp'n 12:9-11.) Plaintiff supports of her position
24 citing the field evaluations of a male officer, but does not
25 identify where the evaluations indicate the length of the
26 officer's field training, (O'Dowd Decl. Ex. L);[7] and cites her

---

27 [7]     Plaintiff also cites to her own deposition testimony where she
   testified that three male officers completed their field training program in
28 less than ten weeks, however she "d[id not] remember" the source of this

18

declaration in which she avers that she spent ten "work weeks" in field training while a male coworker spent only nine.[8] (Perez Decl. ¶ 2.) Plaintiff also argues that Captain Moore testified "he wanted to terminate [Plaintiff's employment] as soon as she was the subject of the initial IA, based on his . . . 'personal experience . . . that a problem in someone's . . . probationary period is often a red flag for future problems,'" yet "[a]t least two . . . male [probationary] officers . . . were the subject of IA investigations and were not terminated."[9] (Opp'n 12:8-17.) Plaintiff supports her position citing the uncontroverted facts that Captain Moore "felt" that after the IA report was completed, releasing Plaintiff from probation would have been appropriate "based on his training with regard to probationary employees." (Def. SUF ¶ 50). Plaintiff also cites her own declaration, in which Plaintiff declares she "served as a witness in an IA investigation" of a male probationary officer who was said to have been "rude and unprofessional to a citizen during a traffic stop," but who "was allowed to pass probation." (Perez Decl. ¶

---

[8] information about the first two officers and testified that she heard about the third officer from "his own mouth." Defendants object to this statement as hearsay. The objection is sustained.

[8] Defendant objects to the field training evaluation as "untimely, unauthenticated hearsay within hearsay." (Pl. SUF ¶ 7.) However, O'Dowd declares the document is "[a] true and correct copy of Doe #3's field training evaluations, received in Defendants' Responses to Plaintiff's Request for Production of Documents Set Two." (O'Dowd Decl. ¶ 4.) Therefore, Defendants authentication objection is overruled. See Orr, 285 F.3d at 777 n.20 (citing Maljack Prods., Inc., 81 F.3d at 889 n. 12 (9th Cir. 1996) for the proposition that "documents produced by a party in discovery were [considered properly authenticated] . . . when offered by the party-opponent."). Defendant also objects to consideration of Plaintiff's averments from her declaration since the averments are hearsay. However, Defendants have not shown that the cited portion of the declaration is hearsay and therefore the objection is overruled.

[9] Plaintiff also argues that "at least one male officer was also given the option to resign in lieu of release from Probation," and Plaintiff "was never afforded this opportunity," but what Plaintiff cites does not support her assertion.

19

1  27, ECF No. 41.) Plaintiff further cites the deposition testimony
2  of Chief Hahn and Captain Moore in which they testify about an IA
3  investigation into whether a male probationary officer flirted
4  with a woman while on-duty, in which no "significant findings...
5  were sustained," and the officer successfully completed his
6  probationary period. (Hahn Dep. Tr. 94:20-95:18; Moore Dep. Tr.
7  77:6-78:18.)

8      Defendants reply that the length of Plaintiff's field
9  training program is not evidence that gender was a motivating
10  factor in her termination, and cite the uncontroverted facts
11  which establish: that "[t]he actual length of an individual
12  police officer's field training program can be either longer or
13  shorter than [10-weeks]" since "the program is not rigidly
14  applied to each officer in exactly the same way, nor is it always
15  a 10-week program." (Reply 4:14-26; Def. SUF ¶¶ 13, 17.)
16  Defendants also argue that although Plaintiff "contends that two
17  probationary male officers were . . . treated differently because
18  they were subject to IA investigations and still passed probation
19  . . . . [t]here is no evidence that these officers were similarly
20  situated to [Plaintiff], nor is there any inference to be drawn
21  that there were somehow treated more favorably." (Reply 5:15-
22  6:1.)

23      Since the uncontroverted facts show that the length of
24  the Police Department's field training program is variable,
25  Plaintiff's evidence that certain male probationary officers
26  finished the program more quickly than Plaintiff does not support
27  drawing a reasonable inference that Plaintiff's gender was a
28  motivating factor in Chief Hahn's decision to terminate her

1    employment. Nor has Plaintiff shown that any IA investigation

2    concerning a male probationary officer resulted in a finding that

3    a claim was sustained. Therefore, Plaintiff has not identified

4    specific and substantial evidence from which the reasonable

5    inference can be drawn that her gender was a motivating factor in

6    Chief Hahn's decision to terminate her probationary employment.

7            Since Plaintiff has not identified evidence from which

8    a reasonable inference could be drawn either that Chief Hahn's

9    stated reasons for terminating her probationary employment were

10   pretext for gender discrimination or that Plaintiff's gender was

11   a motivating factor in Chief Hahn's decision to terminate her

12   probationary employment, Defendants' summary judgment motion on

13   Plaintiff's discrimination claims is granted.

14           **B.   Right to Intimate Association and Privacy**

15           Each Individual Officer Defendant seeks summary

16   judgment on Plaintiff's federal constitutional claim in which she

17   alleges her First Amendment right to intimate association and

18   privacy was infringed, arguing that his qualified immunity

19   defense shields him from this claim. Plaintiff alleges that her

20   "private sexual activities were . . . protected by the

21   Constitution from unwarranted governmental intrusion," and "[t]he

22   internal affairs investigation [into her relationship with

23   Begley] and the manner in which [the investigation] was conducted

24   by [the Individual Officer] Defendants violated [her]

25   constitutional right[s]." (FAC ¶¶ 89, 95, 97, ECF No. 15.) Each

26   Individual Officer Defendant argues "no authority has ever held

27   that the right to privacy [or intimate association] protects a

28   police officer from inquiry into aspects of her personal life

1  that impact her work . . . and therefore [Plaintiff] cannot
2  sustain her burden of showing that her right to privacy [and
3  intimate association] was clearly established at the time of the
4  investigation." (Mot. 21:24-28.)

5          Plaintiff responds the Ninth Circuit showed her right
6  to privacy and intimate association was clearly established at
7  the time of the IA investigation in Thorne v. City of El Segundo,
8  726 F.2d 495 (9th Cir. 1983), where it "held that the
9  Constitution prohibits unregulated, unrestrained employer
10 inquiries into personal, sexual matters that have no bearing on
11 job performance." (Opp'n 19:4-5.)

12         The plaintiff in Thorne completed a polygraph
13 examination as part of her application to the police force;
14 during which she admitted to a past relationship with a member of
15 the police force, which resulted in a miscarriage. 726 F.2d at
16 462. The polygraph examiner "inquired into any . . . sexual
17 relations Thorne may have had within the police department,
18 whether on duty or off," and ultimately declined to hire her. Id.
19 at 469. The Ninth Circuit held that it was inappropriate for the
20 police department to refuse to hire Thorne based on the past
21 information disclosed during the polygraph examination since it
22 had no bearing on her job performance and "[i]n the absence of
23 any showing that [a] private, off-duty [personal relationship]...
24 h[as] an impact upon an applicant's on-the-job performance . . .
25 reliance on these private non-job-related considerations by the
26 state in rejecting an applicant for employment violates the
27 applicant's protected constitutional interests." Id. at 471
28 (emphasis added).

1    Each movant can prevail on his "qualified immunity
2  [defense] . . . [if] his . . . conduct d[id] not violate clearly
3  established statutory or constitutional rights of which a
4  reasonable person would have known." Harlow v. Fitzgerald, 457
5  U.S. 800, 818 (1982). "[Q]ualified immunity is an affirmative
6  defense, and the burden of proving the defense lies with the
7  official asserting it." Houghton v. South, 965 F.2d 1532, 1536
8  (9th Cir. 1992). "[D]etermining whether the law was clearly
9  established 'must be undertaken in light of the specific context
10 of the case, not as a broad general proposition.'" Estate of Ford
11 v. Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002).

12    It is uncontroverted that in June 2012, Leah Begley
13 filed a citizen complaint in which she alleged Plaintiff and
14 Begley were having an affair and "suggest[ed] that Begley and
15 [Plaintiff] were engaging in romantic interactions while on-
16 duty." (Def. SUF ¶¶ 23, 26-27.) It is also uncontroverted that
17 after receiving this complaint, the Police Department initiated
18 an IA investigation into Plaintiff's and Begley's conduct. (Def.
19 SUF ¶ 28.) The Ninth Circuit's holding in Thorne does not show
20 that the IA investigation into Plaintiff's relationship with
21 Begley violated a clearly established constitutional right to
22 privacy and intimate association under the circumstances in which
23 the investigation was conducted. The Ninth Circuit limited its
24 holding in Thorne to circumstances where there was an "absence of
25 any showing that [the applicant's] private, off-duty personal
26 activities. . . [had] an impact upon [her] . . . on-the-job
27 performance." 726 F.2d at 471. Here, the IA investigation into
28 Plaintiff's conduct resulted from a citizen complaint that

1  suggested Plaintiff was engaged in a personal relationship with

2  Begley while <u>on-duty</u>. Therefore, Plaintiff's alleged right to

3  privacy or intimate association was not clearly established "in

4  light of the specific context of the case" and therefore each

5  Individual Officer Defendant's summary judgment motion is

6  granted.  <u>Estate of Ford</u>, 301 F.3d at 1050.

7      **C.   Due Process Name-Clearing Hearing**

8          Each Individual Officer Defendant seeks summary

9  judgment on Plaintiff's claim in which she alleges she was denied

10 her federal due process right to a name-clearing hearing prior to

11 her termination, arguing Plaintiff did not have this right since

12 no stigmatizing information about her was published <u>in connection</u>

13 <u>with her termination</u>.

14          As early as 1972, in <u>Bd. of Regents v. Roth</u>,
           408 U.S. 564, 573 (1972), the United States
15         Supreme Court established that a terminated
           employee has a constitutionally based liberty
16         interest in clearing h[er] name when
           stigmatizing information regarding the
17         reasons for [her] termination is publicly
           disclosed. Failure to provide a "name-
18         clearing" hearing in such a circumstance is a
           violation of the Fourteenth Amendment's due
19         process clause.

20 <u>Cox v. Roskelley</u>, 359 F.3d 1105, 1110 (9th Cir. 2004). This right

21 also applies to probationary employees. <u>Vanelli v. Reynolds Sch.</u>

22 <u>Dist. No. 7</u>, 667 F.2d 773, 777 (9th Cir. 1982) (applying the

23 right to a name clearing hearing in the context of a probationary

24 employee). However, a name-clearing hearing is only required

25 where the stigmatizing charge was "made in connection with

26 termination of employment." <u>Matthews v. Harney Cnty., Or., Sch.</u>

27 <u>Dist. No. 4</u>, 819 F.2d 889, 892 (9th Cir. 1987).

28          Plaintiff contends that the stigmatizing information

24

1    about which she complains was published in connection with her

2    termination when Captain Moore wrote to Leah Begley in response

3    to Leah Begley's complaint since a reasonable inference can be

4    drawn from Captain Moore's letter that the Police Department

5    concluded Plaintiff engaged in a personal relationship with

6    Begley while on-duty. It is uncontroverted that the letter

7    Captain Moore sent to Leah Belgey in response to her citizen

8    complaint is dated August 16, 2012 and states:

> The Roseville Police Department has completed
> its inquiry into the personnel complaint you
> filed alleging your husband and a co-worker
> were engaged in a personal relationship while
> on duty. The following findings have been
> made as a result of the investigation [1]
> Unsatisfactory work performance-SUSTAINED
> [and] [2] Conduct unbecoming-SUSTAINED.

13   (O'Dowd Decl. Ex. S, ECF No. 43.)

14        Captain Moore's August 16 letter to Leah Begley does

15   not indicate Plaintiff's employment was being terminated as a

16   result of Leah Begley's complaint. The letter does not specify

17   whether the findings were sustained against Plaintiff, Begley, or

18   both. Further, it is uncontroverted that Plaintiff's probationary

19   employment was not terminated until September 4, 2012, nine days

20   after the date on Captain Moore's letter, and Chief Hahn avers

21   that the findings sustained as a result of Leah Begley's

22   complaint were not a basis for his decision to terminate

23   Plaintiff's probationary employment. (Def. SUF ¶ 94; Hahn Decl ¶

24   27.) Therefore, Plaintiff has not presented evidence from which a

25   reasonable inference could be drawn that stigmatizing information

26   about her was published in connection with her termination.

27   Accordingly, each Individual Officer Defendant's summary judgment

28   motion on Plaintiff's Due Process claim is granted.

1

**IV. Conclusion**

2

For the stated reasons, each Defendant's summary

3

judgment motion is GRANTED. Judgment shall be entered in favor of

4

each Defendant.

5

Dated:   June 18, 2015

6

7

8

GARLAND E. BURRELL, JR.

Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28